NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUSTIN WILD,<br><br>**Plaintiff,**<br><br>v.<br><br>CARRIAGE SERVICES, d/b/a FEENEY FUNERAL HOME and JOHN AND JANE DOES 1-10 (*fictitious persons not yet known*),<br><br>**Defendants.** | Civil Action No. 2:17-1398 (JLL) (JAD)<br><br>OPINION |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court by way of Plaintiff Justin Wild's Cross-Motion for Leave to File an Amended Complaint, pursuant to Federal Rule of Civil Procedure Rule 15. (ECF No. 9).[1] In accordance with Federal Rule of Civil Procedure 78, the Court did not hear oral argument on Plaintiff's application. Upon careful consideration of the parties' submissions, and for the reasons stated below, Plaintiff's Cross-Motion is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

This case involves Plaintiff's state law claims against Defendant Carriage Services d/b/a Feeney Funeral Home ("Carriage Services") and certain of its employees (currently fictitiously

---

[1] Plaintiff filed his Cross-Motion in response to Defendant Carriage Services' Motion to Dismiss. (ECF No. 3). By Order dated April 18, 2017, Chief Judge Linares administratively terminated Defendant's Motion to Dismiss without prejudice to Defendant's right to refile its motion after this Court resolves Plaintiff's Cross-Motion. (ECF No. 11).

1

pled). (See generally Compl., Ex. A to Notice of Removal, ECF No. 1-1). Plaintiff initiated this matter by filing a Complaint in the Superior Court of New Jersey, Law Division, Bergen County Vicinage, on January 30, 2017. (Id.).

Plaintiff alleges that he began working at Carriage Services as a licensed funeral director on a per-service fee arrangement in or about 2013. (Compl. ¶ 5-6, ECF No. 1-1). In or about 2015, Plaintiff was diagnosed with cancer and had a tumor removed. (Id. ¶¶ 7-8). Doctors later discovered another mass on Plaintiff's spine, which they have yet to remove. (Id. ¶ 9). Plaintiff claims that, as part of his treatment for these conditions, doctors prescribed medical marijuana for him pursuant to the New Jersey Compassionate Use of Medical Marijuana Act, N.J.S.A. 24:6I-1, et seq. (Id. ¶ 10).

Plaintiff alleges that he only uses marijuana at night, and has never been under the drug's influence while at work. (Id. ¶¶ 11-12). Plaintiff contends that, on or about May 23, 2016, and through no fault of his own, he was involved in a motor vehicle accident during the course of his employment. (Id. ¶ 13). Following that accident, an ambulance took Plaintiff to the emergency room where Plaintiff disclosed his marijuana prescription when discussing his medical history. (Id. ¶ 14). Plaintiff claims that he was not under the influence of medical marijuana at the time of the accident and that, because his injuries were work related, his medical marijuana prescription was ultimately disclosed to Defendant Carriage Services. (Id. ¶¶ 15-16).

Plaintiff alleges that he provided proof of his marijuana prescription to Carriage Services, which nevertheless required him to undergo a drug test. (Id. 17-18). Carriage Services then terminated Plaintiff's employment for violating its Drug and Alcohol Policy, which requires all employees to "advise their supervisor if they are taking any medication that may adversely affect their ability to perform assigned duties safely." (Id. ¶ 18). Plaintiff contends that his marijuana

use did not impact his ability to perform his assigned duties as he only used the drug at night, and that he performed the essential functions of his job without issue prior to termination. (Id. ¶¶ 11, 19-20). Plaintiff also alleges that certain unnamed employees and agents of Carriage Services informed members of the Bergen County Funeral Directors Association that Carriage Services terminated Plaintiff's employment because he was "a 'drug addict,' who was 'under the influence of drugs'" at the time of the accident. (Id. ¶ 21). Plaintiff claims that those statements were false, and have harmed his reputation, as well as his ability to obtain new employment. (Id. ¶ 22). Based on those facts, Plaintiff asserted claims for violation of the New Jersey Law Against Discrimination, as well as a common law defamation claim under New Jersey law. (Id. ¶¶ 23-41).

On February 28, 2017, Defendant Carriage Services removed the case to the United States District Court for the District of New Jersey on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§1441 and 1332. (Notice of Removal at 3, ECF No. 1). On the same day, Carriage Services filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). (See generally Def. Mot. to Dismiss, ECF No. 3). On April 17, 2017, Plaintiff filed an opposition to Defendant's Motion to Dismiss, as well as his Cross-Motion for leave to file an Amended Complaint. (ECF No. 9). In his Cross-Motion, Plaintiff seeks to add Carriage Services' employees David B. Feeney, Ginny Sanzo, and Norma Van Zile as named defendants in various existing claims, insert numerous factual allegations, and assert new causes of action for failure to accommodate claim under the New Jersey Law Against Discrimination and for intentional interference with prospective economic advantage. (See generally Prop. First Am. Compl., ECF No. 9-1). On June 05, 2017, Defendant Carriage Services filed a brief in opposition to Plaintiff's Cross-Motion. (ECF No. 20). Plaintiff filed a reply brief in further support of his application on June 12, 2017. (ECF No. 21).

## II. LEGAL DISCUSSION

### a. Propriety of Joinder Under 28 U.S.C. § 1447(e)

As a threshold matter, the Court will consider Carriage Service's argument that the Court should deny Plaintiff's proposed amendment, pursuant to 28 U.S.C. § 1447(e), to the extent Plaintiff seeks to add non-diverse defendants. Carriage Services argues that Plaintiff seeks to add claims against the proposed individual defendants solely for the purpose of depriving the District Court of subject matter jurisdiction. (Def. Br. at 25-28, ECF No. 20). Pursuant to 28 U.S.C. § 1447(e), "[c]ourts may permit joinder of a non-diverse party to a removed case, even if that joinder would then require the court to remand the action back to state court." City of Perth Amboy v. Safeco Ins. Co. of America, 539 F. Supp. 2d 742, 746 (D.N.J. 2008). When faced with such a proposed amendment, however, Courts typically subject it to a level of scrutiny beyond that employed in the context of a traditional Rule 15 analysis. Id.; see also Hensgens v. Deere & Co., 833 F. 2d 1179, 1182 (5th Cir 1987) (noting that, when faced with an amended pleading naming a new non-diverse defendant in a removed case, District Courts should scrutinize that amendment more closely). To that end, "courts in this district along with numerous other districts have adopted a flexible and equitable approach developed by the Fifth Circuit Court of Appeals in Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987)." City of Perth Amboy, 833 F. Supp. 2d at 746. Under Hensgens, courts consider four factors when determining whether joinder might be appropriate: "(1) whether the purpose of the plaintiff's motion is to defeat diversity jurisdiction; (2) whether the plaintiff was dilatory in seeking to amend his complaint; (3) whether the plaintiff will be prejudiced if the motion is not granted; and (4) other equitable factors." Id. (citing Hensgens, 833 F. 2d at 1182).

Here, Defendant Carriage Services contends that each of the <u>Hensgens</u> factors weighs against Plaintiff's request to join the non-diverse, individual defendants David Feeney, Ginny Sanzo and Norma Van Zile. (Def. Br. at 26-30, ECF No. 20). Having carefully reviewed the record for this matter, this Court reaches a different conclusion.

First, despite Defendant's speculation regarding Plaintiffs' tactical motivations for seeking amendment, a plain reading of the defamation claim set forth in Plaintiff's original Complaint made it obvious that Plaintiff would, at some point, substitute one or more non-diverse, individual defendants in lieu of their "John Doe" placeholders. Carriage Services was on notice of Plaintiff's intention to do so at the time it chose to remove the case. Indeed, defense counsel represents that "Plaintiff's counsel's initial pre-suit correspondence to Defendant back in August 2016 specifically alleged that 'David Feeney has been disclosing to numerous individuals that [Plaintiff] was terminated because [Plaintiff] is a "drug addict," who was "under the influence of drugs" when a car accident occurred.'" (Def. Br. at 27-28, ECF No. 20). In short, it appears that counsel for both parties have known all along that David Feeney would be added as a named defendant at some point. If Plaintiff wished to manipulate subject matter jurisdiction to avoid federal litigation, he could have simply named Mr. Feeney as a defendant from the outset, thereby effectively blocking removal. Similarly, if Plaintiff was engaged in the type of jurisdictional gamesmanship that Defendant suggests, Plaintiff could have, at any time, simply dismissed his case without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i)[2] and filed a new action in the New Jersey Superior Court that named the proposed individual defendants. Under

---

[2] Rule 41(a)(1)(A)(i) provides that, subject to certain inapplicable restrictions, "the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."

5

these circumstances, the Court does not find that Plaintiff seeks amendment simply to divest the District Court of subject matter jurisdiction.

Second, the Court finds that Plaintiff was not dilatory in seeking his proposed amendment. This factor "takes into consideration the length of time as well as the nature of the delay. In considering the nature of the delay, a plaintiff's conduct may be found dilatory when the purpose of the delay was to unnecessarily prolong litigation." City of Perth Amboy, 539 F. Supp. 2d at 748. Here, Plaintiff's delay was relatively modest. Plaintiff filed his Cross-Motion 48 days after Defendant simultaneously removed the case and filed its motion to dismiss. (ECF Nos. 1, 3, 9).[3] The case was still in its infancy when he did so. Indeed, had Plaintiff sought amendment only 27 days earlier, he would have been able to amend as a matter of course, pursuant to Federal Rule of Civil Procedure 15(a)(1), without the need for motion practice. Moreover, nothing in the record suggests that Plaintiff seeks amendment for the purpose of delaying this matter. To the contrary, it appears that Plaintiff's counsel conducted an additional factual investigation in response to Defendant's Motion to Dismiss, (Pl. Apr. 3, 2017 Letter, ECF No. 7), and that, in requesting to add multiple claims at this stage of the proceedings (i.e., before the District Court rules on Defendant's motion to dismiss), Plaintiff's amendment actually has the function of ensuring that those claims may be resolved, one way or another, at the earliest possible opportunity.

Third, this Court must examine whether denying Plaintiff's proposed amendment would subject him to prejudice. Defendant argues that it would not, as Plaintiff would be able to simply file claims against any non-diverse defendants in state court. (Def. Br. at 29-30, ECF No. 20). While this Court recognizes that Judges in this District have found that plaintiffs are not necessarily

---

[3] The Court notes that Plaintiff timely filed both his opposition to Defendant's Motion to Dismiss, as well as his Cross-Motion, as Plaintiff obtained both an automatic extension pursuant to Local Civil Rule 7.1(d)(5) and, later, a further extension by Order of Chief Judge Linares. (ECF No. 8).

6

prejudiced by having to concurrently litigate similar claims at both the state and federal levels, see, e.g., Arevalo v. Brighton Gardens, No. 15-2563 (MAS), 2016 U.S. Dist. LEXIS 126261, at *1 (D.N.J. Sep. 16, 2016) (Bongiovanni, M.J.), this Court finds that Plaintiff would be prejudiced under the circumstances at issue here. With regard to his defamation and tortious interference claims, Plaintiff would have to simultaneously litigate the same claims based on the same underlying facts in both federal and state court (i.e., litigation against Defendant Carriage Services in the District Court and against the individual defendants in the New Jersey Superior Court). In addition to the obvious added expense involved, Plaintiff would run the risk of receiving inconsistent determinations on those claims. This factor therefore weighs in favor of keeping Plaintiff's claims together.

Finally, the Court must determine if any other equitable concerns impact the analysis. Neither party sufficiently articulated any such concerns. (Compare Def. Br. at 30, ECF No. 20, with Pl. Reply Br. at 30-32, ECF No. 21). One such equitable factor is the concept of judicial economy. See Fields v. Zubkov, No. 08-2016 (WJM), 2008 U.S. Dist. LEXIS 124999, at *14 (D.N.J. Sep. 8, 2008). Just as requiring Plaintiff to litigate essentially identical claims in two fora may prejudice him, "[c]ompelling a plaintiff to pursue parallel actions in state and federal court is a waste of judicial resources." Id. Additionally, from a practical perspective, Defendant's Hensgens argument appears to be purely academic. As discussed above, even if the Court were to deny joinder of the non-diverse individual defendants, Plaintiff could simply dismiss this matter under Federal Rule of Civil Procedure 41(a)(1)(A)(i) and start over in the New Jersey Superior Court.

Based on the foregoing, the Court finds that, on balance, the Hengens factors weigh in favor of permitting joinder of the non-diverse defendants if that amendment would otherwise be appropriate under Federal Rule of Civil Procedure 15.

**b. Standard Applicable on Motions for Leave to Amend Under Rule 15**

Federal Rule of Civil Procedure 15(a) governs a party's request for leave to amend a complaint and states, in pertinent part, that a party may amend its complaint after obtaining the Court's leave. Fed. R. Civ. P. 15 (a)(2); see also Rivera v. Valley Hospital, Inc., No. 15-5704 (JLL), 2017 WL 916436 at *2 (D. N.J. March, 08 2017) (quoting Wright & Miller § 1484, at 676). Under this rule, the court "should freely give leave when justice so requires." Id. This standard ensures that claims will be decided on their merits rather than on mere technicalities. See Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990) (citing Wright, Miller and Kane, Federal Practice and Procedure, Vol. 6 § 1471 at 505 (2d ed. 1990)).

While District Courts are vested with the broad discretion to grant or deny a motion for leave to amend under Rule 15(a), Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993) (noting "the grant or denial of leave to amend is a matter committed to the sound discretion of the district court"), they must exercise that discretion in light of "Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." Voilas et al. v. General Motors Corp., et al., 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations and quotations omitted); Foman v. Davis, 371 U.S. 178, 182 (1962) (finding "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion"). The United States Court of Appeals for the Third Circuit has interpreted that mandate as requiring that the District Court grant leave to amend in the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive. Grayson v. Mayview State Hosp., 293

8

F.3d 103, 107-08 (3d Cir. 2002); see also Arthur v. Maersk, Inc., 434 F. 3d 196, 204 (3d Cir. 2006) (stating that, generally, leave to amend should be granted "unless equitable considerations render it otherwise unjust.").

In opposing Plaintiff's Cross-Motion, Defendant's primary argument is that all of Plaintiff's proposed amendments would be futile. (Def. Br. at 6-25, ECF No. 20). Defendant does not raise equitable challenges regarding Plaintiff's proposed amendment, other than those addressed above in connection with the Court's Hensgens analysis. As none of those equitable concerns would justify denying Plaintiff's proposed amendment under Federal Rule of Civil Procedure 15 and applicable case law, the Court will therefore focus its discussion on the purported futility of Plaintiff's proposed amendments.

### c. **Futility Analysis**

A proposed amendment "is futile if the amended complaint would not survive a motion to dismiss." County of Hudson v. Janiszewski, 351 F. App'x 662, 666 (3d Cir. 2009) (quoting Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000)); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'") (internal citation omitted). Therefore, "[t]he futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion." Marjam Supply Co. v. Firestone Bldg. Prods. Co., LLC, No. 11-7119 (WJM), 2014 U.S. Dist. LEXIS 46572, *9-10 (D.N.J. Apr. 4, 2014); In re Burlington Coat Factory Sec. Litig., 114 F. 3d 1410, 1434 (3d Cir. 1997); Allah v. Bartkowski, No. 11-3153(MAS), 2017 U.S. Dist. LEXIS 74826, *6 (D. N.J. May, 17 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court notes that Defendant bears the burden of establishing that Plaintiff's proposed amendment is futile, and that, "given the liberal standard applied to the amendment of pleadings," that burden is a "heavy" one. Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., 106 F. Supp. 2d 761, 764 (D.N.J. 2000); accord Marjam, 2014 U.S. Dist. LEXIS 46572 at *10. "Therefore, '[i]f a proposed amendment is not clearly futile, then denial of leave to amend is improper.'" Schiano v. MBNA, No. 05-1771 (JLL), 2013 U.S. Dist. LEXIS 81440, *44 (D.N.J. Feb. 11, 2013) (quoting 6 Wright, Miller & Kane, Federal Practice and Procedure § 1487 (3d ed. 2012)).

### i. Plaintiff's Proposed, Expanded Defamation Claim

Plaintiff seeks to expand his existing claim for defamation to seek relief against Defendant Carriage Services' alleged employees and agents David Feeney and Ginny Sanzo. (Prop. Am. Compl. ¶ 92-97 ECF No. 9-1).[4] To establish a claim for defamation under New Jersey law, plaintiff must demonstrate: (1) a false and defamatory statement about the plaintiff; (2) the unprivileged publication of that statement to a third party; (3) fault amounting to at least negligence by the publisher; and (4) damages. See DeAngelis v. Hill, 847 A.2d 1261, 1267-68 (N.J. 2004) (citing Restatement (Second) of Torts §558); see also Fletcher v. Arrieta, No. 14-cv-6933(JLL), 2015 WL 1815511,*3 (D. N.J. April 20, 2015).

In his Proposed First Amended Complaint, Plaintiff alleges that Defendants David Feeney and/or Ginny Sanzo defamed him, and that Defendant Carriage Services is likewise liable for

---

[4] Plaintiff previously sought relief against Carriage Services and its unnamed "employees and agents, pled as John and Jane Does 1-10." (Compl. ¶ 37, ECF No. 1-1).

10

Feeney and Sanzo's conduct given their roles as its agents and employees.[5] (Prop. Am. Compl. ¶¶ 93-97, ECF No. 9-1). Defendants argue in their opposition that Plaintiff's amendment would be futile because Plaintiff failed to specifically identify either the individuals who made the allegedly defamatory statements or those to whom Defendants allegedly published the statements. (Def.'s Br. at 15-16, ECF No. 20). After a careful examination of Plaintiff's proposed amended pleading, however, the Court finds that Plaintiff has pled enough facts to state a plausible entitlement to relief on his defamation claims against both Ginny Sanzo and David Feeney.

Plaintiff alleges that his supervisor, David Feeney, learned of Plaintiff's medical marijuana use when, following the accident, Plaintiff's father brought a copy of Plaintiff's prescription and license to Feeney Funeral Home. (Prop. Am. Compl. ¶ 30-31 ECF No. 9-1). Ms. Van Zile made a copy of those documents and Plaintiff's father advised Mr. Feeney that the emergency room doctor who treated Plaintiff did not believe that Plaintiff was under the influence of drugs and declined to subject Plaintiff to a blood test, knowing that it would come back positive given Plaintiff's medicinal marijuana use. (Id. ¶¶ 31-32). Plaintiff further alleges that, later that day, Mr. Feeney called Plaintiff's house and insisted that Plaintiff immediately subject himself to a blood test, regardless of the emergency room doctor's previous observation and determination, and notwithstanding the fact that Plaintiff had taken prescription medicine following his accident (thereby guaranteeing a positive test result). (Id. ¶¶ 35-39). Plaintiff underwent a urine and breathalyzer test that evening and reported to Feeney Funeral Home the following day, because a close friend's family member had passed away. (Id. ¶¶ 40-45). During that visit, Plaintiff spoke to Mr. Feeney about his medical marijuana prescription and usage, and Plaintiff stressed to Mr.

---

[5] To the extent that Plaintiff seeks to bring a defamation claim against Defendant Norma Van Zile, it appears that claim would be futile as Plaintiff has not alleged that Defendant Norma Van Zile made any false statements about Plaintiff. (See generally Am. Compl., ECF No. 9-1)

Feeney that he only used the drug after work, so as to avoid jeopardizing his job or licensure. (Id. ¶¶ 46-49). Plaintiff claims that, several days later, Mr. Feeney contacted Plaintiff to advise that "'corporate' [Carriage Funeral Holdings] was unable to handle the marijuana use, and 'You are being terminated because they found drugs in your system.'" (Id. ¶ 56). Mr. Feeney also allegedly contacted Ginny Sanzo and advised her that Plaintiff "had been terminated because of 'drugs.'" (Id. ¶ 57).

Plaintiff claims that his mother received a call from Tracey Zbierski of Vander Plaate Funeral Home, who stated that an unidentified person at Feeney Funeral Home informed her that Plaintiff had been fired because he is "'drug addict.'" (Id. ¶ 70). Ms. Zbierski also told Plaintiff's mother that many people at the Bergen County Funeral Directors Association meeting were discussing rumors that Plaintiff was terminated for his drug use while at Feeney, was 'under the influence of drugs' when the car accident occurred, and the accident happened because [Plaintiff] was 'on drugs.'" (Id. ¶ 71). Plaintiff directly alleges that Mr. Feeney and Ms. Sanzo "falsely informed members of the Bergen County Funeral Directors Association that Plaintiff was a 'drug addict' who was terminated because he was 'under the influence of drugs' at the time of his car accident." (Id. ¶ 93) Finally, Plaintiff alleges that these false statements, made to employers in his industry, harmed his reputation and interfered with his efforts to obtain new employment. (Id. ¶¶ 73, 75-76, 128).

The Court finds that Plaintiff has stated factual allegations that, if true, would establish that: (1) Mr. Feeney and Ms. Sanzo made certain false statements (i.e., that Defendant was a "drug addict" who was "under the influence of drugs" at the time of his car accident); (2) unprivileged publication to third parties (i.e., members of the Bergen County Funeral Directors Association); (3) fault amounting to at least negligence (i.e., that Mr. Feeney and Ms. Sanzo made the statements

in question either with knowledge of their falsity or without sufficient factual bases ); and (4) damages (harm to Plaintiff's reputation within the industry and his related inability to obtain new employment within that industry). The Court will therefore grant Plaintiff leave to amend his pleading to expand his defamation claim to include Defendants Feeney and Sanzo. To the extent Plaintiff also seeks to assert his defamation claim against Ms. Van Zile, the Court denies that relief without prejudice.

### ii. Plaintiff's Proposed Claim for Tortious Interference with Prospective Economic Advantage

Plaintiff also seeks to bring a new claim for tortious interference with prospective economic advantage against Carriage Funeral Services and unnamed, fictionally pled defendants. (Id. ¶¶ 124-31). Plaintiff's tortious interference claim is based on the same alleged conduct as his defamation claim (i.e., that Feeney and Sanzo made false statements about Plaintiff's drug use to members of the Bergen County Funeral Directors Association). (Id.). Given that Plaintiff previously attributed that conduct to Mr. Feeney and Ms. Sanzo, it is unclear why Plaintiff refers to them only as "John Does" in connection with his tortious interference claim. For the sake of efficiency, the Court will nevertheless assume that Plaintiff intends to include Mr. Feeney and Ms. Sanzo as defendants in connection with this cause of action.

The Supreme Court of New Jersey has enumerated four elements necessary to establish a prima facie case for tortious interference with prospective economic advantage under New Jersey law: (1) a reasonable expectation of economic advantage for the plaintiff; (2) interference done intentionally and with malice; (3) causal connection between the interference and the loss of prospective economic gain; and (4) actual damages. See Varrallo v. Hammond Inc., 94 F.3d 842, 848 (3d Cir. 1996) (citing Printing Mart-Morristown v. Sharp Elecs. Corp., 563 A.2d 31, 37 (N.J. 1989)). "For the purposes of this tort, 'malice is defined to mean the harm was inflicted

13

intentionally and without justification or excuse'." New Skies Satellites, B.V. v. Home2Us Communications, Inc., 9 F. Supp. 3d 459, 472 (D.N.J. 2014) (quoting Printing Mart-Morristown, 563 A.2d at 37).

Most of these elements are not in legitimate dispute, nor could they be, given Plaintiff's factual allegations. In its opposition, Carriage Services argues that Plaintiff's tortious interference claims fails because "Plaintiff fails to allege the employment opportunities for which he was allegedly denied as a result of the Defendant's alleged comments." (Def. Br. at 24, ECF No. 20). This Court disagrees. Plaintiff did not, as Defendant suggests, "simply assert[] in conclusory fashion that he was 'denied future opportunity for employment.'" (Id. at 24) (citing Prop. Am. Compl. ¶ 131, ECF No. 9-1). Rather, Plaintiff provided significantly more detail, alleging that he "has submitted several applications and resumes, talking to other funeral homes, who have denied Plaintiff employment because they were aware that [Plaintiff] was a 'drug addict.'" (Prop. Am. Compl. ¶ 128, ECF No. 9-1). It is reasonable to infer, viewing Plaintiff's allegations holistically, that Plaintiff applied for and was denied employment with one or more funeral homes affiliated with the Bergen County Funeral Directors Association. In light of this finding, as well as those set forth above in connection with Plaintiff's defamation claim, the Court finds that Plaintiff has sufficiently pled his proposed tortious interference claim against Carriage Services, Mr. Feeney and Ms. Sanzo. As with Plaintiff's defamation claim, however, Plaintiff has not alleged any facts that might establish a plausible entitlement to relief against Norma Van Zile.

### iii     Plaintiff's Claims Under the New Jersey Law Against Discrimination

The balance of Plaintiff's proposed amendments are dedicated to Defendants' alleged violations of various aspects of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("NJLAD") (Prop. Am. Compl. ¶ 79-122 ECF No. 9-1). Specifically, Plaintiff asserts new

"failure to accommodate" claims under the NJLAD (Counts IV and V, based on Plaintiff's actual disability and perceived disability, respectively), as well as a wrongful termination claim based on Plaintiff's perceived disability (Count VI) (Id. ¶¶ 98-122),[6] and a claim that certain individuals defendants aided and abetted Carriage Services' alleged discriminatory termination, also in violation of the NJLAD (Count II) (Id. ¶¶ 86-91).

The analysis on Plaintiff's new discriminatory discharge claim is straightforward. As Chief Judge Linares has noted:

> The starting point for an action brought pursuant to the NJ LAD is the framework outlined by the Supreme Court in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See Monaco v. American General Assur. Co., 359 F.3d 296, 300 (3d Cir. 2004) ("The Supreme Court of New Jersey has explained the three-step burden shifting analysis 'as a starting point' for analysis of claims under the NJLAD.") (citing Bergen Commercial Bank v. Sisler, 157 N.J. 188, 210, 723 A.2d 944 (N.J. 1999)). The three-step McDonnell Douglas analysis proceeds as follows. First, a plaintiff must establish a prima facie case of discrimination. Monaco, 359 F.3d at 300. To establish a prima facie case of discriminatory discharge under the NJ LAD, a plaintiff must demonstrate: (1) that he is a member of a protected class; (2) that he was otherwise qualified and performing the essential functions of the job; (3) that he was terminated; and (4) that the employer thereafter sought similarly qualified individuals for the job who were not members of his protected class. See Victor v. State, 203 N.J. 383, 408-09, 4 A.3d 126 (2010).

Kohler v. TE Wire & Cable LLC, No. 14-3200 (JLL), 2016 U.S. Dist. LEXIS 29635, *10 (D.N.J. Mar. 8, 2016). Carriage Services argues that Plaintiff has failed to allege facts sufficient to articulate a prima facie showing of discrimination, (Def. Br. at 6-10, ECF No. 20), and this Court agrees. Plaintiff has certainly alleged facts establishing that: (1) he was disabled by virtue of his

---

[6] Plaintiff previously asserted a wrongful termination claim based on his actual disability in Count I of his original Complaint. (Compl. ¶¶23-29, ECF No. 1-1). That claim is not properly before this Court in the context of Plaintiff's motion for leave to amend. If it were, the Court notes that it would fail for the same reasons discussed herein with regard to Plaintiff's proposed Count VI.

15

illness and the pain associated therewith, (Prop. Am. Compl. ¶¶ 15-17, ECF No. 9-1); (2) he used medicinal marijuana to control his pain, but his marijuana use did not impact his ability to do his work (he only used it at home after work), and that he satisfactorily performed all of his job obligations, (id. ¶¶ 19, 24, 61-62); and (3) Carriage Services terminated Plaintiff's employment based on his marijuana use, despite knowing that it was his prescribed medical treatment. (Id. ¶¶ 30-31, 38, 45-49, 56). Plaintiff has not, however, sufficiently alleged that Carriage Services either replaced or sought to replace Plaintiff with a similarly qualified individual outside of his protected class. (See generally id.). The Court will therefore deny Plaintiff's motion for leave to amend, without prejudice, to the extent he seeks to add his proposed Count VI.

Plaintiff also ostensibly seeks to amend Count II of his original Complaint to assert his NJLAD aiding and abetting claims against certain named defendants. "To establish aider and abettor liability under the NJ LAD, a plaintiff must show that '(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.'" Dieng v. Comput. Sci. Corp., No. 14-5381 (JLL), 2016 U.S. Dist. LEXIS 29642, at *25-26 (D.N.J. Mar. 8, 2016) (quoting Tarr v. Ciasulli, 181 N.J. 70, 84 (N.J. 2004) (brackets in original). While Plaintiff included the aiding and abetting claims in his original Complaint, he did not name any specific individual defendants in that pleading, instead asserting his claims solely against fictionally pled "John Doe" defendants. While Plaintiff now seeks to add David Feeney, Ginny Sanzo, and Norma Van Zile to the case as defendants, Count II of his proposed amended pleading does not mention any of them by name. (Id. ¶¶ 86-91). In his reply brief, Plaintiff clarified that he did not intend to include Ms. Sanzo or Ms. Van Zile in his aiding and abetting claim at this time, and instead sought

16

to assert those claims against Mr. Feeney and "unknown Corporate personnel (John Does) of 'corporate' who made the decision to terminate Mr. Wild's employment." (Pl. Reply Br. at 11, ECF No. 21). To the extent Plaintiff seeks to amend his pleading to assert his aiding and abetting claim against Mr. Feeney, that relief is denied, as Plaintiff has simply not pled a sufficient factual basis for such a claim. Plaintiff may, however, amend his pleading to include additional allegations against the "John Does" in question, as no party has established that such an amendment would be futile.

Finally, Plaintiff seeks to include two new counts NJLAD counts, claiming that Carriage Services failed to accommodate his disability or, in the alternative, his perceived disability. (Prop. Am. Compl. ¶¶ 98-114, ECF No. 9-1). It appears that resolution of these claims will focus heavily on the interplay between the New Jersey Compassionate Use of Medical Marijuana Act, N.J.S.A. 24:6I-1, and the NJLAD. It further appears from the parties' briefing that these issues involve certain important questions of first impression concerning New Jersey statutory law and policy. As this Court has already determined that Plaintiff may amend his pleading to add defamation and tortious interference claims against Mr. Feeney and Ms. Sanzo, and their joinder will divest the District Court of subject matter jurisdiction and necessitate remand, this Court believes that determinations regarding Plaintiff's proposed failure to accommodate claims should be left to the New Jersey Superior Court Judge who will ultimately preside over this matter. This Court will therefore deny Plaintiff's Cross-Motion to the extent he seeks to add Counts IV and V, without prejudice to Plaintiff's right to seek leave to amend his pleading to add those claims at a later date. The Court stresses that, in doing so, it is not ruling or opining on the merits of Plaintiff's proposed failure to accommodate claims.

## CONCLUSION

Based on the foregoing, Plaintiff's Cross-Motion, (ECF No. 9), is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**. An appropriate form of Order accompanies this Opinion.

_____
JOSEPH A. DICKSON, U.S.M.J.

cc: Hon. Jose L. Linares, C.J.